IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

LARRY ROSS and
PATRICIA CLARK,

    Plaintiffs,

v.                                        No. 09-cv-1098

DEBORAH MARTIN,
TREY PHILLIPS, and
JOE BARTLETT,

    Defendants.

_____

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
_____

Before the Court is a motion for summary judgment pursuant to Fed. R. Civ. P. 56, filed by Defendants Deborah Martin ("Martin"), Trey Phillips ("Phillips"), and Joe Bartlett ("Bartlett") in their individual capacities, seeking dismissal of all claims against them for monetary damages. (Docket Entry ("D.E.") No. 19.) The Plaintiffs, Larry Ross ("Ross") and Patricia Clark ("Clark"), have responded to the motion (D.E. No. 62), and it is appropriate for disposition. For the reasons set forth herein, the Court **GRANTS** the motion.

FACTUAL BACKGROUND

This case stems from an allegedly illegal seizure of Plaintiffs' personal property on May 4th and 5th of 2005.[1] (D.E. No. 1, Complaint, ¶¶ 7-8.) In all, Plaintiffs claim that the State of Tennessee seized $628,871 in currency, a houseboat, four automobiles, and "numerous" guns from Larry Ross; and seized $2,882.27 in currency and two vehicles from Patricia Clark. (Id.)

---

[1]    Plaintiffs' complaint avers that these seizures occurred in May of 2004, but all of the other documentation in this case indicates that May 4th and 5th of 2005 are the correct dates.

All of these items were "forfeited to the State of Tennessee subject to a hearing" because the seized property was suspected to have been associated with the sale or trafficking of drugs. (Id.) The State held multiple hearings before Administrative Judge Rob Wilson, who, on December 21, 2006, ordered that "all property [] be returned to Plaintiffs as said seizure was improper." (Id. at ¶ 10.) Phillips and Bartlett, attorneys for the State, appealed Judge Wilson's decision to Martin, whom the Commissioner of Safety designated to hear the appeal, pursuant to Tenn. Code Ann. § 4-5-315. (Id. at ¶ 11.) On April 23, 2008 and April 28, 2008, Martin affirmed Judge Wilson's initial orders as to Ross and Clark, respectively, ordering that their property be returned to them. (Id. at ¶ 12.)

The complaint contains no allegation that the State has failed to return Plaintiffs' property to them. However, Plaintiffs contend that during the pendency of the aforementioned administrative proceedings, Martin, Phillips, and Bartlett conspired to "extort money from Plaintiffs to benefit the State of Tennessee." (Id. at ¶ 19.) Specifically, Plaintiffs claim that Phillips and Bartlett threatened to "tie up Plaintiffs [sic] assets for 4 to 7 years" unless Plaintiffs paid Phillips and Bartlett a large sum of money, and that Martin was complicit in this extortion scheme by dragging out the appeals process. (Id. at ¶¶ 15-18.) As a result of these actions, Plaintiffs claim they have incurred damages in the form of: "deprivation of use of their vehicles and attendant damage from storage, as well as loss of enjoyment of their property. Further[,] Plaintiffs had to incur substantial time, attorney fees and expenses defending against the seizure." (Id. at ¶ 20.)

Plaintiffs filed this lawsuit on April 23, 2009, seeking damages and injunctive relief pursuant to 42 U.S.C. § 1983.  In its Order dated February 26, 2010, the Court dismissed all claims against the State of Tennessee; all claims against Martin, Phillips, and Bartlett in their

official capacities; and all claims for injunctive relief against Martin and Bartlett in their individual capacities. (D.E. No. 54.) In the instant motion, the Defendants seek dismissal of the claims for damages against Martin, Phillips, and Bartlett in their individual capacities, arguing that they are entitled to absolute quasi-judicial and prosecutorial immunity, respectively.

STANDARD OF REVIEW

Fed. R. Civ. P. 56(c) provides that

> judgment . . . should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(c); *see also* Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986); Canderm Pharmacal, Ltd. v. Elder Pharms., Inc., 862 F.2d 597, 601 (6th Cir. 1988). In reviewing a motion for summary judgment, the Court views the evidence in a light most favorable to the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986). When the motion is supported by documentary proof, such as depositions and affidavits, the nonmoving party may not rest on the pleadings but, rather, must present some "specific facts showing that there is a genuine issue for trial." Celotex, 477 U.S. at 324; *see also* Abeita v. TransAmerica Mailings, Inc., 159 F.3d 246, 250 (6th Cir.1998). It is insufficient for the nonmoving party "simply [to] show that there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586. These facts must be more than a scintilla of evidence and must meet the standard of whether a reasonable juror could find by a preponderance of the evidence that the nonmoving party is entitled to a verdict. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). Summary judgment must be entered "against a party who fails to make a showing sufficient to

establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. In this Circuit, "this requires the nonmoving party to 'put up or shut up' [on] the critical issues of [an] asserted cause[] of action." Lord v. Saratoga Capital, Inc., 920 F. Supp. 840, 847 (W.D. Tenn. 1995) (citing Street v. J.C. Bradford & Co., 886 F.2d 1472, 1478 (6th Cir. 1989)). Finally, the "judge may not make credibility determinations or weigh the evidence." Adams v. Metiva, 31 F.3d 375, 379 (6th Cir. 1994).

## ANALYSIS

Plaintiffs allege that Phillips and Bartlett attempted to extort money from them during settlement negotiations, and threatened to "tie up Plaintiffs [sic] assets for 4 to 7 years" if they did not pay the requested sums. (D.E. No. 1, Complaint, ¶¶ 15-16.) With respect to Martin, Plaintiffs claim that she aided Phillips and Bartlett in their attempts to "tie up" Plaintiffs' assets by ignoring correspondence from them and dragging her feet in ruling on the State's appeal. (Id. at ¶¶ 18-19.) Phillips and Bartlett insist that when they took the actions of which Plaintiffs complain, they were acting in a manner that is consistent with their prosecutorial responsibilities. (D.E. No. 24, Motion for SJ, pp. 4-7.) As a result, they contend that "[a]bsolute prosecutorial immunity bars [the] claim[s] against [D]efendants Bartlett and Phillips in their individual capacities because all allegations involve prosecutorial actions which are intimately associated with the judicial process." (Id. at p. 4.) Similarly, Martin maintains that because she was performing a quasi-judicial function at the time of the events of which Plaintiffs complain, she is entitled to absolute immunity as well. (Id. at pp. 8-9.) The Court will consider these two contentions in order.

4

Bartlett and Phillips

State officials enjoy "absolute immunity from civil liability related to their performance of 'prosecutorial functions.' "[2] Koubriti v. Convertino, 593 F.3d 459, 467 (6th Cir. 2010) (citing Burns v. Reed, 500 U.S. 478, 486, 111 S. Ct. 1934, 114 L. Ed. 2d 547 (1991)). The burden of proof is on the official who seeks such immunity, and the United States Supreme Court has mandated that courts use a "functional approach" when determining whether an official's conduct fits within the "category of actions traditionally entitled to absolute immunity." Id. "Functions that serve as an 'integral part of the judicial process' or that are 'intimately associated with the judicial process' are absolutely immune from civil suits." Koubriti, 593 F.3d at 467 (quoting Imbler v. Pachtman, 424 U.S. 409, 430, 96 S. Ct. 984, 47 L. Ed. 2d 128 (1976)). Conversely, functions that are more "investigative" or "administrative" in nature, "because they are more removed from the judicial process, are subject only to qualified immunity." Koubriti, 593 F.3d at 467 (citing Burns, 500 U.S. at 486). The Sixth Circuit has noted that the line between the two sometimes can be difficult to draw, but that prosecutors have absolute immunity for, *inter alia*, "evaluation of evidence and presentation of that evidence at pre-trial and trial proceedings." Koubriti, 593 F.3d at 467 (citing Spurlock v. Thompson, 330 F.3d 791, 797 (6th Cir. 2003)).

Moreover, it is axiomatic that "allegations of bad faith, malice, and even fraud—all of which may be relevant to a *qualified* immunity analysis—cannot, except in the most unusual of

---

[2] In their response, Plaintiffs do not address Defendants' arguments that they are entitled to absolute immunity. They attempt to argue that Bartlett and Phillips should not be granted *qualified* immunity, but none of the Defendants has argued that he or she is entitled to qualified immunity. (D.E. No. 62, Response to Motion for SJ, pp. 1-3.) Plaintiffs do not attempt to argue that absolute immunity is inappropriate; instead, they fail to address it entirely. Further, as noted *infra*, they do not address Martin's immunity claim at all in their response.

circumstances, overcome *absolute* immunity." DL Capital Group, LLC v. Nasdaq Stock Market, Inc., 409 F.3d 93, 98-99 (2d Cir. 2005) (emphasis in original); *see also* Bernard v. County of Suffolk, 356 F.3d 495, 502-05 (2d Cir. 2004) (internal citations and alterations omitted) (when prosecutor is acting within the scope of his duties as a judicial officer, his motive is "irrelevant," because "absolute immunity spares the official any scrutiny of his motives so that allegations of bad faith or malice cannot defeat a claim of absolute immunity"); Ireland v. Tunis, 113 F.3d 1435, 1447 (6th Cir. 1997), *reh'g and suggestion for reh'g en banc denied* (June 26, 1997) (citing Schloss v. Bouse, 876 F.2d 287, 291 (2d Cir. 1989) (internal citations omitted), which noted that a prosecutor's conduct in settlement negotiations is protected by absolute immunity, notwithstanding allegations of fraud or other improper behavior).

In the instant case, the wrongdoing that Plaintiffs allege Bartlett and Phillips to have committed was entirely connected with settlement negotiations. That is, the only malfeasance of which Bartlett and Phillips are accused is "threatening," during settlement negotiations with Plaintiffs, to "tie up" Plaintiffs' assets for four to seven years in an attempt to "coerce a settlement favorable to the State of Tennessee."[3] (D.E. No. 62, Response to SJ Motion, Exhibit A, Leonard Affidavit, pp. 1-4.) Accepting without deciding that Plaintiffs' claims are accurate with respect to Bartlett's and Phillips's attempted extortion,[4] they nevertheless enjoy absolute

---

[3] Even accepting as true Plaintiffs' claims as to Bartlett and Phillips, it is unclear how they were damaged by these alleged actions. At best, Plaintiffs' complaint avers that Bartlett and Phillips *attempted* to extort money from them, and *attempted* to tie up their property for four to seven years. However, there is no indication that these efforts were successful. That is, there is nothing in the record to indicate that Plaintiffs ever paid any sort of settlement to the State, nor that their property was held by the State beyond the time when Martin ordered that it be returned to them. Thus, it is not at all apparent that Plaintiffs suffered any injury at the hands of Bartlett or Phillips. Nevertheless, because the Court finds that Bartlett and Phillips are entitled to absolute prosecutorial immunity, it need not evaluate the sufficiency of Plaintiffs' alleged injury.

[4] In their response, Plaintiffs also level several vague, barely comprehensible *ad hominem* attacks at Bartlett and Phillips, claiming that they have exhibited a pattern of engaging in the sort of extortive conduct of which they are accused in this case. (D.E. No. 62, Response to SJ Motion, p. 3.) The only "proof" Plaintiffs have offered to support these allegations is a six-page section from Bartlett's deposition, which is hardly the smoking gun Plaintiffs assert it to be—in that section of the deposition, Bartlett does nothing more than describe the procedure he followed during settlement negotiations in two prior cases. More importantly, however, such malfeasance, even if

6

immunity for such actions, given the fact that settlement negotiations are an inherent function of a prosecutor *qua* prosecutor: "That [Plaintiffs] ascribe[] impure and malicious motives to the prosecutors is of no consequence, for absolute immunity provides complete protection from judicial scrutiny of the motives for the prosecutors' actions." Ireland, 113 F.3d at 1447. Accordingly, Bartlett and Phillips enjoy absolute immunity, and therefore, they are entitled to summary judgment on Plaintiffs' claims against them for damages.

### Martin

" 'Judicial immunity' is shorthand for the doctrine of absolute immunity that operates to protect judges and quasi-judicial officers alike from suit in both their official and individual capacities." Dixon v. Clem, 492 F.3d 665, 674 (6th Cir. 2007) (citing DePiero v. City of Macedonia, 180 F.3d 770, 783 (6th Cir. 1999)). Absolute judicial immunity, once established, can be overcome in only two situations: (1) "a judge is not immune from liability for . . . actions not taken in the judge's judicial capacity"; and (2) "a judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction."[5] Dixon, 492 F.3d at 674 (quoting DePiero, 180 F.3d at 784). Determining whether an action was judicial in nature turns on whether the act is one ordinarily performed by a judge, and whether the parties intended to deal with the judge in his or her judicial capacity. DePiero, 180 F.3d at 784 (citing Stump v. Sparkman, 435 U.S. 349, 362, 98 S. Ct. 1099, 55 L. Ed. 2d 331 (1978)). The reason for such extensive protection of judges and quasi-judicial officers is a "long-settled understanding that the independent and impartial exercise of judgment vital to the judiciary might be impaired by

---

substantiated, would be of no moment in determining whether absolute immunity attaches in the *current* proceeding; determinations of immunity must be made with the particular factual circumstances of the case in mind. *See, e.g.*, Koubriti, 593 F.3d at 467-68 (analyzing certain scenarios that warrant a grant of prosecutorial immunity).

[5] The Plaintiffs have not argued that either of these exceptions applies, nor have they successfully refuted Martin's claim of immunity, as noted *infra*.

exposure to potential damages liability." Dixon, 492 F.3d at 674 (quoting DePiero, 180 F.3d at 783). "[S]tatutorily empowered hearing officers are entitled to absolute judicial immunity under the standard set forth in Butz v. Economou, 438 U.S. 478, 98 S. Ct. 2894, 57 L. Ed. 2d 895 (1978)." Dixon, 492 F.3d at 674 (citing Shelly v. Johnson, 849 F.2d 228, 230 (6th Cir. 1988) (per curiam)).

In Butz, the United States Supreme Court articulated a non-exhaustive list of safeguards traditionally "built into the judicial process," the presence or absence of which can be relevant to a determination of absolute immunity for a quasi-judicial officer: "The insulation of the judge from political influence, the importance of precedent in resolving controversies, the adversary nature of the process, and the correctability of error on appeal are just a few of the many checks on malicious action by judges." Butz, 438 U.S. at 512. The Supreme Court found that a federal hearing examiner is "functionally comparable" to a judge, and thus, is entitled to absolute quasi-judicial immunity. Id. at 512-13. However, *state* hearing officers are entitled to quasi-judicial immunity only when they are "subject to restraints comparable to those imposed by the Administrative Procedure Act and performing adjudicatory functions in resolving potentially heated controversies." Purisch v. Tennessee Technological University, 76 F.3d 1414, 1422 (6th Cir. 1996) (quoting Watts v. Burkhart, 978 F.2d 269 (6th Cir. 1992)). As a result, the Sixth Circuit in Purisch reiterated a tripartite test for quasi-judicial immunity from its earlier decision in Watts: (1) that the official's position is akin to that of a judge; (2) that the potential for "vexatious lawsuits" against the official is great, due to the contentious nature of the proceedings before the official; and (3) that sufficient safeguards—such as those articulated in Butz and in the Tennessee Uniform Administrative Procedure Act ("TUAPA"), Tenn. Code Ann. § 4-5-301 *et seq.*—exist to protect a complainant's constitutional rights. Purisch, 76 F.3d at 1422.

Plaintiffs do not respond to Martin's claims of quasi-judicial immunity. Indeed, the extent of Plaintiffs' argument with regard to Martin is that she took too long to render her opinion:

> In regard to Defendant, Deborah Martin, she had a statutory obligation as the Commissioner's Designee to make her ruling on the appeal or remand for further proceedings within sixty (60) days pursuant to T.C.A. 4-5-315(h). More than nine (9) months transpired from the briefs being entered until her final Order.

(D.E. No. 62, Response to Motion for SJ, p. 3.) Plaintiffs fail to mention that Tenn. Code Ann. § 4-5-315(h) provides an exception to the sixty-day rule "for good cause shown," and it is clear from Martin's deposition that she believed the complexity of this case necessitated a longer review process; Plaintiffs acknowledge this in their response, saying, "Ostensibly [Martin] began working on an Order in a timely manner to overturn Judge Wilson's Order because the case was so complex." (D.E. No. 62, Response to Motion for SJ, p. 3.) Regardless, even if Plaintiffs are correct in asserting that Martin took an unusually long time to file her order, such a contention has no bearing on the issue of Martin's quasi-judicial immunity.

Pursuant to the Sixth Circuit's test in Purisch, it is clear that Martin is entitled to quasi-judicial immunity for her role in reviewing Judge Wilson's initial order. There seems to be no disagreement among the parties that Martin's position with respect to the instant conflict was akin to that of a judge. She was statutorily appointed to review a decision rendered by an administrative law judge, and all parties' accounts of the trajectory and manner of the appeal indicate that it was virtually identical to one conducted in the judicial system. (D.E. No. 25, Defendants' Statement of Undisputed Facts, ¶ 4); (D.E. No. 61, Response to Defendants' Statement of Undisputed Facts, ¶ 4—no objection); *see also* Tenn. Code Ann. § 4-5-315 (outlining the procedure for review of an initial order). Perhaps most significantly, all parties appear to have intended to deal with Martin as a judge. Dixon, 492 F.3d at 674. There is no

indication that Martin was involved in any way with the parties or the proceedings outside of her role as the statutorily appointed hearing officer. Moreover, given the contentious nature of forfeiture proceedings, the potential for "vexatious lawsuits" against Martin would be great if there were no immunity in place to protect her from such suits—again, Plaintiffs do not dispute this. Purisch, 76 F.3d at 1422.

Finally, given the fact that Martin's review of the initial order was prescribed and defined by the TUAPA itself, the review process obviously contained the sort of procedural safeguards that one finds in the Administrative Procedure Act. Purisch, 76 F.3d at 1422. Plaintiffs do not take issue with the fact that both Martin's authority to hear the appeal and the appeals process itself were directly and precisely outlined in the TUAPA, or that Martin followed the directives of the TUAPA in this case. (D.E. No. 61, Response to Defendants' Statement of Undisputed Facts, ¶¶ 3-4—no objection.)

A review of the safeguards enumerated in Butz likewise demonstrates that quasi-judicial immunity is appropriate in this case. Martin avers that "[a]s a member of the Appeals Division and as required by T.C.A. § 4-5-303(b), she was not subject to any authority, direction or pressure from anybody who represented the State in the Plaintiffs' drug forfeiture hearing or from anybody else in the Department of Safety, including the Commissioner." (D.E. No. 25, Defendants' Statement of Undisputed Facts, ¶ 7.) In response, Plaintiffs deny this, claiming that "[s]he was told to enter an Order affirming Judge Wilson's Order," citing page twenty-five of Martin's deposition to support this contention. However, the cited page of Martin's deposition belies this assertion, as it reveals that she specifically said she "was not advised how to rule." (D.E. No. 62, Exhibit C, Martin Deposition, p. 25.) Presumably Plaintiffs have focused upon Martin's statement that the attorney general "would not support" her decision if she were to

overturn Judge Wilson's order. (Id.) This, however, is a far cry from any sort of influence that would compromise Martin's independence as a hearing officer; without more, Martin's statement indicates her awareness of the attorney general's preference, but not that he attempted to strong-arm her into reaching a particular result. Her affidavit reinforces this viewpoint, and Plaintiffs have offered no other evidence to contradict it: "As provided in § 303(b) [of the TUAPA], I was not subject to authority, direction, discretion, or pressure of anybody who served as an investigator, prosecutor, or advocate in this contested case. Nor was I subject to any authority, direction, discretion or pressure from the Commissioner of the Department of Safety, or any other person or entity that had an interest in the forfeiture." (D.E. No. 21, Martin Affidavit, p. 17, ¶ 3.) Plaintiffs have adduced nothing further to indicate in any way that Martin was subject to external pressure to reach a particular outcome.[6]

Further, the TUAPA dictates that proper legal precedent and analysis be used throughout the course of these proceedings, which are subject to the Tennessee Rules of Civil Procedure. *See* Tenn. Code Ann. §§ 4-5-311 – 315. Plaintiffs have not argued that Martin failed to do so. Moreover, the TUAPA contemplates and prescribes an adversarial process, wherein all parties have the opportunity to file briefs and supporting evidence in an attempt to obtain a favorable decision. Id. Once again, Plaintiffs do not argue otherwise. Finally, Tenn. Code Ann. §§ 4-5-322 and 323 clearly outline the procedure for judicial review of decisions reached in accordance with the TUAPA, which Plaintiffs do not deny. Thus, the relevant safeguards that the Supreme Court articulated in Butz as inherent in the judicial process also were present in this case.

---

[6] Moreover, it is worth pointing out that the outcome Martin reached—affirming Judge Wilson's order that returned Plaintiffs' property to them—was *beneficial* to the Plaintiffs. Thus, it strains credulity to think that Plaintiffs were somehow victims of adverse political pressure on Martin, given that she decided the case in their favor. It is also puzzling why Plaintiffs continue to attempt to discredit Martin by invoking the attorney general's alleged "influence" over her, given the fact that such influence—even if proved—was nothing but helpful to them.

As a result, pursuant to the Sixth Circuit's test established in <u>Purisch</u> and the safeguards the Supreme Court enumerated in <u>Butz</u>, Martin has established that she is entitled to quasi-judicial immunity for her role in these proceedings, and accordingly, she is entitled to summary judgment on Plaintiffs' claims against her for damages.

## CONCLUSION

For the reasons set forth herein, the Defendants' motion for summary judgment is **GRANTED**. Plaintiffs' claims for damages against Martin, Phillips, and Bartlett in their individual capacities are hereby DISMISSED.

**IT IS SO ORDERED** this, the 16th day of March, 2010.

<u>s/ J. DANIEL BREEN            </u>
UNITED STATES DISTRICT JUDGE